UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROMEO JERGESS, MICHAEL DIAMOND,
GLENDA DIAMOND, FREDERICK
K.A. LEWERENZ and ELAINE MILLER,
Individually and as the Representative of a
Class of Similarly Situated
Persons,

                Plaintiffs,

v.
                                       <u>CLASS ACTION</u>
                                       Case No. 00-72124
                                       HONORABLE AVERN COHN

TRANSNATION TITLE INSURANCE COMPANY,
FIRST AMERICAN TITLE INSURANCE COMPANY,
CHICAGO TITLE INSURANCE COMPANY, and
LAWYERS TITLE INSURANCE CORP.,

                Defendants.
_____/

**<u>MEMORANDUM AND ORDER APPROVING SETTLEMENT
AND ATTORNEY FEES AND COSTS</u>**[1]

I.

This is a class action case under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607, claiming builders received a discount for owners title insurance pursuant to an agreement or understanding that they refer purchasers (plaintiffs) of new homes to the title insurance companies (defendants) for lenders title insurance in violation of § 2607(a) and receive a split of the charge for lenders title insurance to purchasers of new homes in violation of § 2607(b).

The case has been settled. The details follow.

---

[1]This is a revision and extension of the Court's bench decision of May 16, 2006.

On May 16, 2006, the Court held a hearing on the fairness of the settlement as well as plaintiffs' counsel's request for attorney fees. For the reasons that follow, the settlement is APPROVED and plaintiffs' counsel is AWARDED attorney fees in the amount of 30% of the settlement fund together with reimbursement of costs incurred in the prosecution of the case.

## II.

Essentially, plaintiffs' two count complaint claimed that (1) defendants charged builders a flat $25 for an owners title policy pursuant to an agreement or understanding that the builders refer plaintiffs to them for their lenders title policy for which defendants charged a full rate in violation of § 2607(a) of RESPA; and (2) gave a portion of the full rate charge for the lenders title policy to the builders in the form of the $25 flat rate when the builders performed no settlement services in violation of § 2607(b) of RESPA.

On November 6, 2002, the Court certified the case as a class action under Fed. R. Civ. P. 23(a) and (b)(3). See Decision Certifying Case as a Class Action. That decision best describes the parameters of the case.

> The class was initially defined as follows:
>
>> All individuals who, during the period commencing one year prior to the filing of the Complaint in each of the consolidated cases applicable to that person and ending October 31, 2002, purchased a newly constructed one to four family dwelling or condominium within the State of Michigan in a transaction
>> – which involved a federally related mortgage loan
>>
>> – in which the individual was charged for and there was issued a loan policy of title insurance by a defendant in the name of the mortgage lender to the individual
>>
>> – in which the individual purchased the dwelling or

> condominium from the builder and the individual was issued an owner's policy of title insurance by the same defendants simultaneously with issuance of the loan policy.

The original cut-off date of October 30, 2002 was extended several times. The class periods vary slightly as to each defendant as follows:

| Defendant | Class Period |
| --- | --- |
| Transnation | May 10, 1999 to June 30, 2005 |
| First American | June 9, 1999 to June 30, 2005[2] |
| Lawyer's Title | April 28, 2000 to June 30, 2005 |
| Chicago Title | April 28, 2000 to May 31, 2005 |

Plaintiffs sent out approximately 64,500 notices via first class mail as well as provided public notice.

The parties engaged in mediation between May and September 2005, involving two different facilitators. The facilitation resulted in a proposed settlement of the case with each defendant subject to the approval of the Court. The joint amount of the settlement is $27,550,000, broken down as follows:

| Defendant | Amount |
| --- | --- |
| Transnation & Lawyer's Title | $10,325,000 |
| First American | $ 9,575,000 |
| Chicago Title | $ 7,650,000 |

---

[2]The class period for First American also includes "any person charged for a 'Loan Policy' after June 30, 2005 at First American's 'New Construction Rate' that was in effect up through June 30, 2005, in connection with a transaction in which a First American agent had issued a title insurance commitment to that person's lender before June 30, 2005."

3

The settlement also provides for an enhancement award of $35,000.00 for each of the named plaintiffs.

On February 10, 2006, the Court entered orders granting preliminary approval of the settlement as to each defendant.

Notice was sent to 64,511 class members.  Several have opted out as follows:

| Defendant | Number of Opt Outs |
|---|---|
| Transnation | 298 |
| First American | 290 |
| Lawyer's Title | 201 |
| Chicago Title | 313 |

There are no objections to the settlement.

There are cy pres provisions in each settlement agreement as to any settlement funds which are not disbursed to class members.  In the settlement agreements with Transnation, Lawyers Title and Chicago Title, the additional funds are to be donated in equal halves to the Access to Justice Fund of the Michigan State Bar Foundation and to the Community Foundation of Michigan.  The settlement agreement with First America provides that any additional funds will be donated to Habitat for Humanity, Michigan Chapter and any interest remaining after payment of costs of Claims Administration will be contributed to the Access to Justice Fund of the Michigan State Bar Foundation.

III.

As to the fairness of the settlement, Fed. R. Civ. P. 23(e)(1)(C) provides that "the court may approve a settlement ... that would bind class members only after a hearing and on finding that the settlement ... is fair, reasonable, and adequate."

In assessing the fairness, reasonableness, and adequacy of a proposed settlement, the court should "compare the terms of the compromise with the likely rewards of litigation." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 425 (1968), reh'g. denied, 391 U.S. 909 This comparison requires consideration of two main elements. First, although the court need not, and should not, decide the merits of the controversy, it should consider the existence of serious questions of law and fact which place the ultimate outcome of the litigation in doubt. See Florida Trailer and Equipment Company v. Deal, 284 F.2d 567, 571 (5th Cir. 1960). Second, the court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. The court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. The court is not to substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.' " Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y. 1971).

The court's determination also requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." Manual for Complex Litigation (Third) § 30.42 at 238 (1995). Relevant factors include: "(a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery

completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest." In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citing Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir. 1992); Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir. 1983); Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 501-02 (E.D. Mich. 2000); Steiner v. Fruehauf Corp., 121 F.R.D. 304, 305-06 (E.D. Mich. 1988)).

In light of the foregoing, the Court has reviewed the settlement agreements with each defendant, heard a presentation by plaintiffs' counsel detailing the settlement and notice process, and reviewed the exhibits introduced at the hearing, a list of which is attached as Exhibit A, and finds that the settlement amounts and terms are fair, reasonable, and adequate.  This was a complex real estate case which involved difficult and original issues under RESPA.  It has been pending on the docket since 2000; it was hard-fought.  Discovery was particularly contentious.  The parties are commended in the decision to reach a settlement in lieu of further litigation.  The settlement was a product of arms length negotiations by competent counsel.  There are no objections to its terms.  This result is in the best interest of the parties, unnamed class members, and in the public interest.

IV.

As to attorney fees, Fed. R. Civ. P. 23(h) provides that the court "may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of

the parties." If the court holds a hearing on a motion for attorney fees, it must state it findings and conclusions of law on the motion as required by Rule 52.

Each settlement agreement provides that each of the defendants will not object to any request up to 28% of the settlement amount, or $7,714,000. Plaintiffs request 31% of the settlement amount, or $8,540,000 in attorney fees. Plaintiffs also request reimbursement of costs.

Courts have considered several criteria in the allowance and award of attorney fees.[3] These include:

> Benefits Conferred Upon the Members of the Class Results Achieved;
> Time and Effort Expended by Counsel in the Litigation;
> Advance Fee Arrangements, If Any, Between Counsel and Members of the Class;
> Point in Time During the Litigation When Settlement Was Achieved Proximity to Trial;
> Magnitude, Complexity and Novelty of the Litigation Legal Questions Presented and the State of the Law;
> Assistance, If Any, From Governmental Agency or Other Related Proceedings;
> Court's Knowledge of the Nature, Extent and Quality of Services Rendered by Counsel;
> Considerations of Public Policy;
> Responsibility Undertaken by Class Counsel Risks Involved and Inherent Preclusion of Other Employment;
> Awards in Similar Cases;
> Nature and Extent of Objections, If Any, to Allowance of Attorney Fees

See In re King Resources Securities Litigation, 420 F. Supp. 610, 628-29 (D. Co. 1976).

---

[3]The Court of Appeals for the Sixth Circuit has articulated six factors in evaluating the reasonableness of a requested fee percentage: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996); Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir.1983).

As noted, plaintiffs' counsel request a percentage-of-recovery from the settlement fund in the amount of 31%.  According to the Manual for Complex Litigation, Third § 24.121 (1995), most district courts select a percentage in the range from 24% to 30% of the fund.  Although no class members object to the amount of requested attorney fees, First American objects to the 31% request because it is more than the 28% spelled out in the settlement agreements.

Ultimately, the amount of attorney fees to be awarded is a prudential decision in light of the factors listed above.  Considering all of these factors, particularly the complexity of the case and the difficulties encountered by plaintiff in pursuing the case, obtaining names of all the class members, and notifying them, the Court is satisfied that the appropriate attorney fees is 30% of the settlement award.  In addition, the named plaintiffs are awarded enhancements in the requested amount of $35,000 each.  Plaintiffs are also awarded their requested costs.  The amount of attorney fees and costs are forth in the Final Order and Judgment of Settlement for each defendant which shall be separately entered.

SO ORDERED.

Dated:  May 18, 2006               s/Avern Cohn
                                                     AVERN COHN
                                                     UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 18, 2006, by electronic and/or ordinary mail.

                                                      s/Julie Owens
                                                     Case Manager, (313) 234-5160